Filed 6/30/22  Digiacomo v. Recology CA1/4

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| RAYMOND VINCENT DIGIACOMO, JR.,<br><br>　　　Plaintiff and Appellant,<br><br>v.<br><br>RECOLOGY, INC.,<br><br>　　　Defendant and Respondent. | A162871<br><br>(San Francisco City & County Super. Ct. No. CGC-19-581651) |

In this private nuisance lawsuit, the trial court denied appellant's request for a preliminary injunction to compel respondent Recology, Inc. to install locks on bins for recyclables, compost, and residual waste in an alleyway below his apartment, and to place restrictions on the collection times for these bins. We affirm the trial court's order.

### BACKGROUND

Appellant sued respondent in December 2019.  He filed his operative second amended complaint in September 2020, alleging a private nuisance claim stemming from the noise generated from respondent's recyclables, compost, and waste collection activity late at night and early in the morning, and the noise from third-

1

party "dumpster div[ing]" in unlocked collection bins in Maiden Lane, the alleyway below appellant's apartment in the Union Square District of San Francisco.

In November 2020, appellant requested a preliminary injunction seeking to prohibit respondent from collecting recyclables, compost, and residual waste in Maiden Lane from 10:00 p.m. to 7:00 a.m., and seeking to compel respondent to install locks on collection bins in Maiden Lane. Respondent opposed the motion on the grounds that appellant's request did not preserve the status quo; appellant failed to carry his burden of demonstrating the likelihood of prevailing on the merits; and appellant failed to carry his burden of demonstrating that he will suffer irreparable injury if the motion were denied.

Following a hearing, the trial court denied appellant's motion. After reciting that appellant was required to prove, by an objective standard, that respondent's interference was both unreasonable and substantial, the court found appellant failed to satisfy his burden for three reasons. First, appellant "failed to provide sufficient evidence to persuade the [c]ourt of his likelihood of success" on the elements of substantial and unreasonable interference under an objective standard. While appellant and his co-tenant attested to the unreasonableness of the noise, they had "unique medical issues," and their declarations failed to persuade the court that an objective factfinder would find the noise unreasonable and substantial. Second, a local ordinance regulating the generation of noise for

2

waste disposal services, San Francisco Police Code section 2904[1], provided "an objective standard" for measuring the reasonableness of the noise at issue, and appellant provided no evidence to suggest the noise violated that ordinance. Third, appellant had not established a likelihood of prevailing on his claim that respondent had "a legal duty—or even the ability—to curtail the activities of third party 'dumpster divers,' who he alleges are the source of a substantial amount of the noise of which he complains."

The trial court then undertook to balance the harms and found appellant had "failed to present evidence persuading the [c]ourt that he will suffer a greater interim harm in the event the requested injunction is denied." Appellant averred that he would " 'continue to experience the mental and physical health

---

[1] This ordinance provides, in relevant part, "It shall be unlawful for any person authorized to engage in waste removal, collection, or disposal services or recycling removal or collection services to provide such services so as to create an unnecessary amount of noise, in the judgment of the Director of Public Health. . . . [¶] Notwithstanding the foregoing, it shall be unlawful for any person authorized to engage in waste removal, collection, or disposal services, or recycling removal or garbage-collection services to operate hydraulic compaction or mechanical processing systems on any truck-mounted waste, recycling, or garbage loading and/or compacting equipment or similar mechanical device so as to create mechanical or hydraulic noise exceeding 75 dBA when measured at a distance of 50 feet from the equipments. This maximum noise level does not apply to the noise associated with crushing, impacting, dropping, or moving garbage on the truck, but only to the truck's mechanical processing system. All other waste disposal or collection noises are subject to the Director of Public Health's judgment . . . ." (S.F. Police Code, § 2904.)

ramifications of persistent and chronic sleeplessness,' " but the court concluded this statement was too general to prove the requisite harm. Furthermore, appellant had been living in the conditions complained of for two years. On the other hand, the court found that granting the injunction would require respondent to "effect a wholesale change in waste collection schedules and policies while facing a shortage of drivers due to the COVID-19 pandemic." After balancing the equities, the court concluded that appellant was not entitled to injunctive relief. Appellant appealed.

## DISCUSSION

### I. Applicable Legal Standards

"The decision whether to issue a preliminary injunction requires the trial court to ' "evaluate two interrelated factors: (i) the likelihood that the party seeking the injunction will ultimately prevail on the merits of his [or her] claim, and (ii) the balance of harm presented, i.e., the comparative consequences of the issuance and nonissuance of the injunction." ' [Citation.] The court's ruling is not an adjudication of ultimate rights, but balances the respective equities of the parties to determine whether ' " ' "pending a trial on the merits, the defendant should or . . . should not be restrained from exercising the right claimed by him [or her]." ' " ' " (*Brown v. Pacifica Foundation, Inc.* (2019) 34 Cal.App.5th 915, 925.) The burden is on the party seeking the preliminary injunction to show all the elements necessary to support the issuance of a preliminary injunction. (*O'Connell v. Superior Court* (2006) 141 Cal.App.4th 1452, 1481.)

4

Although the general purpose of a preliminary injunction is to preserve the status quo pending a determination on the merits of the action, the court "also has the power to issue a preliminary injunction that ' " 'mandates an affirmative act that changes the status quo' " ' [citation], but should do so only in those ' " 'extreme cases where the right thereto is clearly established.' " ' " (*Integrated Dynamic Solutions, Inc. v. VitaVet Labs, Inc.* (2016) 6 Cal.App.5th 1178, 1183–1184.)

"Ordinarily, the decision whether to grant a preliminary injunction is reviewed for an abuse of discretion, and factual findings underlying the court's ruling are reviewed for substantial evidence." (*Brown v. Pacifica Foundation, Inc.*, *supra*, 34 Cal.App.5th at p. 925.) The appellate court does not weigh the evidence or conflicts therein. (*U. S. Hertz, Inc. v. Niobrara Farms* (1974) 41 Cal.App.3d 68, 79.) It will, however, more closely scrutinize an injunction that changes the status quo. (*Brown*, at p. 925.)

## II. Analysis

Appellant argues that the trial court erred in finding that he had not established a reasonable probability of prevailing on the merits of his nuisance claim, as well as in determining that the balance of hardships did not favor interim relief. As set forth below, the trial court did not abuse its discretion in rendering either determination.

A private nuisance includes "[a]nything which is injurious to health, including, but not limited to, the illegal sale of controlled substances, or is indecent or offensive to the senses, or

5

an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property . . . ." (Civ. Code, § 3479.) " '[E]xcessive and inappropriate noise may under certain circumstances constitute an interference with the present enjoyment of land amounting to a nuisance.' " (*Mendez v. Rancho Valencia Resort Partners, LLC* (2016) 3 Cal.App.5th 248, 264 (*Mendez*).)

To prevail on an action for private nuisance, a plaintiff must prove an interference with the plaintiff's use and enjoyment of his or her property. (*San Diego Gas & Electric Co. v. Superior Court* (1996) 13 Cal.4th 893, 938 (*San Diego*).) "[T]he invasion of the plaintiff's interest in the use and enjoyment of the land [must be] *substantial*, i.e., that it cause[s] the plaintiff to suffer 'substantial actual damage.' " (*Ibid.*) Further, " '[t]he interference with the protected interest . . . must also be *unreasonable*' [citation], i.e., it must be 'of such a nature, duration or amount as to constitute unreasonable interference with the use and enjoyment of the land.' " (*Ibid.*; accord, *Mendez*, *supra*, 3 Cal.App.5th at pp. 262–263.) The requirements of substantial damage and unreasonableness stem from the law's recognition that " '[l]ife in organized society and especially in populous communities involves an unavoidable clash of individual interests. Practically all human activities unless carried on in a wilderness interfere to some extent with others or involve some risk of interference, and these interferences range from mere trifling annoyances to serious harms. It is an obvious truth that each individual in a community must put up with a

6

certain amount of annoyance, inconvenience and interference and must take a certain amount of risk in order that all may get on together.  The very existence of organized society depends upon the principle of "give and take, live and let live," and therefore the law of torts does not attempt to impose liability or shift the loss in every case in which one person's conduct has some detrimental effect on another.  Liability . . . is imposed in those cases in which the harm or risk to one is greater than he ought to be required to bear under the circumstances, at least without compensation.' " (*San Diego*, at pp. 937–938.)

The elements of substantial damage and unreasonableness are judged by an objective standard.  (*San Diego*, *supra*, 13 Cal.4th at p. 938.)  With respect to the former, the degree of harm is to be measured by the "effect . . . the invasion [would] have on persons of normal health and sensibilities living in the same community." (*Ibid.*)  " 'If normal persons in that locality would not be substantially annoyed or disturbed by the situation, then the invasion is not a significant one, even though the [idiosyncrasies (*sic.*)] of the particular plaintiff may make it unendurable to him.' " (*Ibid.*)  With respect to the latter, "[t]he primary test for determining whether the invasion is unreasonable is whether the gravity of the harm outweighs the social utility of the defendant's conduct, taking a number of factors into account.  [Citation.]  Again the standard is objective: the question is not whether the particular plaintiff found the invasion unreasonable, but 'whether reasonable persons generally, looking at the whole situation impartially and

7

objectively, would consider it unreasonable.' [Citation.] . . . 'Fundamentally, the unreasonableness of intentional invasions is a problem of relative values to be determined by the trier of fact in each case in the light of all the circumstances of that case.' " (*Id.* at pp. 938–939.) Whether the plaintiff has established each element is a question of fact to be determined by considering all the circumstances of the case. (*Ibid.*)

The trial court here did not abuse its discretion in concluding that appellant failed to establish a likelihood of success on the merits. First, appellant does not challenge the trial court's finding that he failed to show that respondent had a legal duty to curtail, and hence was responsible for, the noise or activities of third-party "dumpster divers."

Next, the trial court could reasonably conclude that appellant had not shown a likelihood of success on the elements of substantial damage and unreasonable interference under an objective standard. Appellant supported his motion with his verified operative complaint, his declaration, and his co-tenant's declaration. Appellant averred that he suffered from paranoia and debilitating mental health challenges that can be exacerbated by lack of sleep. He pled that his building is a supportive housing facility, which "houses those suffering from some form of mental health related challenge, and are thus members of San Francisco's most [v]ulnerable population, and are thus especially susceptible to the ramifications of continual sleep deprivation." His co-tenant further declared that he suffered from liver disease and a heart condition that required

8

him to get adequate sleep, and he stated in a single sentence that the trash collection activity was "a nuisance which negatively impacts both my health and my enjoyment of my property, as said collections prevent me from obtaining adequate sleep." The trial court did not abuse its discretion in concluding the evidence before it showed that appellant and his co-tenant, who considered the noise at issue to be offensive and unreasonable, had "unique medical issues," and the evidence did not persuasively establish a reasonable likelihood that an objective factfinder would find the noise to be a substantial and unreasonable interference. (See *Mendez*, *supra*, 3 Cal.App.5th at p. 281 [individuals' subjective expressions of displeasure with sounds from outdoor events did not necessitate a finding that those sounds were objectively unreasonable].) And, while appellant listed URLs in his declaration where three videos that he took of the alleged nuisance were purportedly available to view, even if the court deemed these videos to be properly authenticated and admissible, we cannot say that their content compelled the court to conclude that appellant met his burden.[2] (See *U.S. Hertz, Inc. v. Niobrara Farms*, *supra*, 41 Cal.App.3d at p. 79 [appellate courts do not weigh evidence].)

---

[2] Appellant also argues that San Francisco Police Code section 2904, as applied to him by the trial court, was unconstitutional and applied in error. Given our conclusion above and the fact that the trial court relied on the ordinance as an alternative basis to conclude appellant failed to show he was likely to succeed on the unreasonable interference element of his nuisance claim, we need not address this argument.

9

Nor do we find merit in appellant's assertion that the trial court erred by ignoring Evidence Code section 730[3]. Appellant contends that the trial court had the power under that statute to appoint a sound technician to render an objective measure of the noise "to essentially re-create said sound level for a jury to analyze at the time of trial." But nothing in Evidence Code section 730 compels a court to appoint an expert sua sponte. Rather, the statutory authority is discretionary. (Evid. Code, § 730 [when it appears to court expert evidence is or may be required by court or by any party, court "may" appoint expert]; see *Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 443 ["may" is ordinarily permissive].) The record does not reflect that appellant sought the appointment of an expert in connection with his motion for interim relief. Consequently, that the court did not appoint an expert sua sponte to support appellant's request for extraordinary preliminary injunctive relief in this civil lawsuit was not an abuse of discretion.

---

[3] Evidence Code section 730 states: "When it appears to the court, at any time before or during the trial of an action, that expert evidence is or may be required by the court or by any party to the action, the court on its own motion or on motion of any party may appoint one or more experts to investigate, to render a report as may be ordered by the court, and to testify as an expert at the trial of the action relative to the fact or matter as to which the expert evidence is or may be required. The court may fix the compensation for these services, if any, rendered by any person appointed under this section, in addition to any service as a witness, at the amount as seems reasonable to the court."

Finally, the trial court did not abuse its discretion in determining that the balance of harms did not weigh in favor of a preliminary injunction. In opposing the motion, respondent presented evidence that the choice of whether to pay for a locked collection bin belongs to the customer, and respondent could not unilaterally impose a rate increase for locks without a public hearing process. It also presented some evidence, which the trial court credited, of the difficulties in guaranteeing waste collection in Maiden Lane between 7 a.m. and 10 p.m., including that the alleyway is not always open to vehicle traffic, and respondent has preassigned routes, such that its pandemic-related driver shortage and fleet mechanical issues can require deviation in scheduled pickup times. Appellant averred generally that he would continue to suffer mental and physical health ramifications from lack of sleep and paranoia without the requested relief. However, he also pled the alleged nuisance had been ongoing since at least August 2018, and he did not request this preliminary injunction until November 2020. (See *O'Connell v. Superior Court*, *supra*, 141 Cal.App.4th at p. 1481 [court should consider plaintiff's delay in seeking injunction in determining what weight to give plaintiff's claim of imminent irreparable injury].) Considering this record along with the lack of showing of likelihood of success on the merits, the trial court did not arbitrarily conclude that appellant failed to establish entitlement to any aspect of the preliminary injunctive relief he requested.

## DISPOSITION

The order is affirmed.

                                        BROWN, J.

WE CONCUR:

STREETER, ACTING P. J.
NADLER, J.*

*Digiacomo v. Recology, Inc.* (A162871)

---

* Judge of the Superior Court of California, County of Sonoma, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.